UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ALDEN JOE DANIEL, JR., | ) | |
|---|---|---|
| | ) | |
| *Petitioner*, | ) | |
| v. | ) | No. 1:03-cv-426 |
| | ) | *Edgar* |
| JACK MORGAN, Warden, and | ) | |
| STATE OF TENNESSEE, | ) | |
| | ) | |
| *Respondents.* | ) | |

## **MEMORANDUM**

Alden Joe Daniel, Jr. ("Daniel") seeks post-conviction relief from his state conviction and sentence pursuant to 28 U.S.C. § 2254. [Doc. No. 1]. The Respondents move for summary judgment. [Doc. No. 8]. The Court notes that there are various other ancillary motions currently pending: a motion for an extension of time to respond to Daniel's habeas petition by the Respondents [Doc. No. 6]; a motion for an extension of time to respond to the Respondents' summary judgment motion by Daniel [Doc. No. 15]; a motion to amend his motion for an extension of time by Daniel [Doc. No. 17]; and a motion to supplement the record with additional affidavits by Daniel [Doc. No. 19]. The Court will **GRANT** these ancillary motions [Doc. Nos. 6, 15, 17, 19] and will consider the entire record. Upon considering the record, Daniel's claims, and the arguments of both parties, the Court will **GRANT** the Respondents' motion for summary judgment [Doc. No. 8].

-1-

I.     **Standards of Review**

   A. **Summary Judgment**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Shah*, 338 F.3d at 566; *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, determine the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *Shah*, 338 F.3d at 566; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "Evidence suggesting a mere possibility" of a factual dispute is not enough to preclude summary judgment. *Shah*, 338 F.3d at 566; *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *Nat'l Satellite Sports*, 253 F.3d at 907. While the Court draws all reasonable factual inferences in the light

most favorable to the non-moving party, it may grant summary judgment if the record taken as a whole could not lead a rational, objective jury to find for the non-moving party. *Matsushita*, 475 U.S. at 587; *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003).

**B. Habeas Corpus Under 28 U.S.C. § 2254**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, state prisoners may seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *see also Reed v. Farley*, 512 U.S. 339, 347 (1994). Ordinarily, state prisoners must first exhaust their available state court remedies before seeking federal habeas relief by fairly presenting all their claims to the state courts. 28 U.S.C. §§ 2254(b), (c); *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002); *Carter v. Bell*, 218 F.3d 581, 606-07 (6th Cir. 2000). A habeas petitioner has exhausted his state court remedies if he fairly presents all his claims to the highest court in the state, thus giving the state a full and fair opportunity to rule on the petitioner's claims before he seeks relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Dietz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

If, however, a prisoner fails to present his claims to a state court and is now barred from pursuing relief in the state courts, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. *Coleman v. Thompson*, 501 U.S. 722, 730-32 (1991); *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995); *Rust*, 17 F.3d at 160; *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). While there is no exhaustion problem in such a scenario, "[a] federal court is also barred from hearing issues that could have been raised in

-3-

the state courts, but were not, and now may not be presented to the state courts due to a procedural defect or waiver." *Deitz*, 391 F.3d at 808 (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *accord Gray* 518 U.S. 161-62; *Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Rust*, 17 F.3d at 160. "For purposes of procedural default, the state ruling with which the federal court is concerned is the 'last explained state court judgment.'" *Howard v. Bouchard*, 405 F.3d 459, 476-77 (6th Cir. 2005) (quoting *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004)).

If the claim is procedurally defaulted, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *accord Gray*, 518 U.S. 161-62; *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Richey v. Mitchell*, 395 F.3d 660, 678 (6th Cir. 2005); *Dietz*, 391 F.3d at 808. Such a fundamental miscarriage of justice exists "when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense." *Dretke*, 541 U.S. at 388 (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)); *accord Deitz*, 391 F.3d at 808; *Rust*, 17 F.3d at 162. If proceeding under the actual innocence exception, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Murray*, 477 U.S. at 496; *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004). To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. *Id.* at 324.

If the petitioner exhausted his state court remedies and raised the habeas claim in state court, the appropriate standard of review depends upon whether the state court adjudicated the claim on the merits. If so, the application for writ of habeas corpus "shall not be granted . . . unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *accord Howard*, 405 F.3d at 461. However, when the habeas claim has not been "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), courts "look at the claim de novo rather than through the deferential lens of AEDPA," *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

The statutory phrase "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision," *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Once the "clearly established Federal law" has been identified, courts consider whether the state-court decision is "contrary to" or "involved an unreasonable application of" such law. A state-court decision is contrary to clearly established law if that court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413; *accord Howard*, 405 F.3d at 461. A decision involves an unreasonable application of clearly established Federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

-5-

of the prisoner's case." *Id.*; *accord Howard*, 405 F.3d at 461. A state adjudication is not "unreasonable" "simply because [a federal] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411; *accord Howard*, 405 F.3d at 461. Rather, "the state court's application of established Supreme Court precedent must be objectively unreasonable." *Howard*, 405 F.3d at 461 (citing *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *accord Williams*, 529 U.S. at 411.

## II.  Facts

Daniel was indicted on thirteen charges of statutory rape, sexual battery and rape, stemming from allegations by various members of a girls' basketball team that Daniel coached. After Daniel was indicted, he fled the state and was apprehended six months later. At his trial a jury convicted Daniel of flight to avoid prosecution but could not reach a verdict on the sexual offense charges. Subsequently, the state commenced a second trial against Daniel. During the jury selection, the parties sought a recess to explore a possible plea agreement. After negotiations, Daniel pleaded guilty to five counts of statutory rape, two counts of sexual battery and one count of rape. In exchange, the prosecutor dropped the remaining charges against Daniel and agreed not to prosecute Daniel's family members for aiding and abetting Daniel's escape or for perjury at Daniel's first trial. Daniel received a nine year sentence, significantly less than the potential sentence if he were convicted at trial.

Daniel then filed a petition for post-conviction relief in state court. [Doc. No. 11, Addendum No. 1]. Daniel attacked the validity of his guilty plea, the effectiveness of his counsel, the prosecutor's conduct and withholding of evidence and agreements with witnesses, the selection of the grand jury, and errors made by the trial judge. [*Id.*]. The post-conviction trial court heard

-6-

Case 1:03-cv-00426   Document 21   Filed 07/25/05   Page 6 of 16   PageID #: 166

evidence on Daniel's claims. [Doc. No. 11, Addendum No. 2]. The court made factual findings and found Daniel not to be credible. [Doc. No. 11, Addendum No. 1 at p. 82]. In light of the evidence and the factual findings, the Court concluded that Daniel "stated no claim on which [p]ost[-c]onviction [r]elief can be granted" and dismissed his petition. [*Id.* at p. 83].

Daniel appealed this decision and raised three claims: that his guilty plea was invalid; that his counsel was ineffective in regards to the guilty plea; and that his counsel was ineffective due to a conflict of interest arising from his counsel's representation of a previous client. [Doc. No. 12, Addendum No. 3]. Daniel then dismissed his post-conviction counsel and filed a supplemental brief attacking the effectiveness of that counsel. [Doc. No. 12, Addendum No. 5]. The Tennessee Court of Criminal Appeals reviewed each of Daniel's claims, finding that none warranted post-conviction relief. [Doc. No. 12, Addendum No. 9].

Daniel applied for permission to appeal to the Tennessee Supreme Court. [Doc. No. 12, Addendum No. 10]. The Tennessee Supreme Court denied Daniel's application. [Doc. No. 12, Addendum No. 13]. Daniel then timely filed this petition for post-conviction relief. [Doc. No. 1].

**III.    Analysis**

In his petition seeking habeas corpus relief, Daniel asserts two claims, though combined as one: that his guilty plea was unknowing and involuntary; and that his counsel was ineffective during the plea process. [Doc. Nos. 1, 2]. Daniel subsequently filed an amendment to his petition raising an additional eight claims: that the prosecution withheld four pieces of exculpatory evidence, namely that the rape victims received compensation requiring them to testify against Daniel, that the victims were planning to file a civil action against Daniel, that the log book from Daniel's alleged employer was not an original but one pieced together to use against Daniel, and that in exchange for his

-7-

Case 1:03-cv-00426   Document 21   Filed 07/25/05   Page 7 of 16   PageID #: 167

testimony one of the prosecution's key witnesses would not be charged for his criminal conduct; that state attorney had a conflict of interest; that his counsel was ineffective due to two conflicts of interest; and that the judge had a conflict of interest. [Doc. No. 4].

**A. Exhaustion and Procedural Default**

Of his ten claims, Daniel only exhausted his state court remedies for three of those claims. To the Tennessee Court of Criminal Appeals, Daniel only raised three claims: that his guilty plea was not voluntary and intelligent; that his counsel was ineffective in regards to the guilty plea; and that his counsel was ineffective due to a conflict of interest arising from the representation of a former client. Daniel fairly presented these three claims to the Tennessee Supreme Court by applying for permission to appeal the decision of the Tennessee Court of Criminal Appeals. However, Daniel's application was denied. Accordingly, Daniel exhausted his state court remedies with respect to these three claims.

Daniel did not, however, exhaust his state court remedies with respect to the seven other claims that he now raises before this Court in his petition for post-conviction relief, including the four prosecutorial misconduct claims for withholding evidence and the conflict of interest claims against the prosecutor, the judge and the one remaining such claim against his counsel. [See Doc. No. 4]. Daniel did not raise these seven claims to the Tennessee Court of Criminal Appeals. [See Doc. No. 12, Addendum No. 9]. Indeed, Daniel admits as much in discussing each of these seven claims. [See Doc. No. 4].

Nonetheless, these seven claims cannot be dismissed for lack of exhaustion because Daniel is barred from pursuing relief in Tennessee state courts. *See Coleman*, 501 U.S. at 730-32; *Hannah*, 49 F.3d at 1195-96; *Rust*, 17 F.3d at 160; *see also Gray*, 518 U.S. at 161-62. Daniel has exhausted

-8-

all of the state remedies available to him. Daniel petitioned for post-conviction relief in the state court where he was convicted [Doc. No. 11, Addendum No. 1, at p. 1] and his petition was denied [Doc. No. 11, Addendum No. 1 at pp. 68-83]. Daniel then appealed that decision to the Tennessee Criminal Court of Appeals [Doc. No. 11, Addendum No. 1 at p. 84] which denied Daniel relief [Doc. No. 12, Addendum No. 9]. Upon losing that appeal Daniel applied for permission to appeal in the Supreme Court of Tennessee [Doc. No. 12, Addendum No. 10], and the Tennessee Supreme Court denied Daniel's application [Doc. No. 12, Addendum No. 13].

And Daniel is barred from seeking any further remedies in state court. A Tennessee state prisoner may only file one habeas petition attacking his conviction. *See* Tenn. Code Ann. § 40-30-102(c). A Tennessee prisoner may move to reopen a post-conviction proceeding that has concluded. *See* Tenn. Code Ann. § 40-30-117(a). However, such a remedy is only available if the facts underlying the claim establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or reduced and if one of the following three exceptions applies: (1) the claim is based upon a newly established constitutional right that was not recognized at the time of trial and the right is to be applied retroactively to the petitioner; (2) the claim is based on scientific evidence establishing that the petitioner is actually innocent of the challenged offense; or (3) the claim seeks relief from a sentence that was enhanced because of a previous conviction which has subsequently been declared invalid, and the challenged conviction in which the claim is based was not obtained by a guilty plea with an agreed sentence. *Id.*

Here, none of these exceptions apply to enable Daniel to re-open his post-conviction proceedings in Tennessee state courts. None of the seven new claims are based upon a newly established and retroactive constitutional right; none are based on scientific evidence of actual

innocence; and none seek relief from a sentence that was enhanced due to a previous conviction that has been declared invalid. Consequently, Daniel is barred from seeking any further post-conviction relief in Tennessee state courts, and he has exhausted his state court remedies. Accordingly, Daniel's seven new claims will not be dismissed for lack of exhaustion. *See Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 730-32; *Hannah*, 49 F.3d at 1195-96; *Rust*, 17 F.3d at 160.

Nonetheless, this Court is barred from reviewing these seven new claims. *See Gray* 518 U.S. 161-62; *Coleman*, 501 U.S. at 750; *Teague*, 489 U.S. at 297-98; *Rust*, 17 F.3d at 160. By not raising these claims before the Tennessee Court of Criminal Appeals and by not being able to re-open his state post-conviction proceedings to present them to the state courts, Daniel has procedurally defaulted these claims. To overcome this procedural default such that this Court could consider the merits of these seven claims, Daniel must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," *Coleman*, 501 U.S. at 750; *accord Gray*, 518 U.S. 161-62; *Dretke* 541 U.S. at 388; *Richey*, 395 F.3d at 678; *Dietz*, 391 F.3d at 808, or "demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense," *Dretke*, 541 U.S. at 388 (citing *Murray*, 477 U.S. at 495-96); *accord Deitz*, 391 F.3d at 808; *Rust*, 17 F.3d at 162.

Here, Daniel opts to proceed under the actual innocence exception. [See Doc. No. 4]. To satisfy the actual innocence exception, Daniel must show that, in light of new and reliable evidence not presented at trial, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 324-27; *Murray*, 477 U.S. at 496; *Hargrave-Thomas*, 374 F.3d at 389. Simply put, Daniel cannot meet this high threshold. Fatal to Daniel's actual innocence assertion, Daniel pleaded guilty. There is no jury verdict for Daniel to

overcome by presenting evidence of actual innocence.

Moreover, even assuming Daniel did not plead guilty but was instead convicted by a jury, the evidence he presents the Court is insufficient to establish actual innocence and overcome a jury verdict. None of Daniel's new evidence establishes his innocence. Some—that the victims received compensation requiring them to testify for the prosecution, that the victims were planning a civil trial against Daniel, or that a witness negotiated a deal whereby he would not be charged for criminal conduct in exchange for his testimony against Daniel—is fodder to attack the credibility of the prosecution's potential witnesses, but not evidence of Daniel's innocence. And the remaining new evidence—that the logbook from Daniel's alleged employer was damaged and incomplete—undermines the weight of the prosecution's evidence, but does not establish Daniel's innocence. The three additional claims merely allege a conflict of interest and do not raise any new evidence, much less evidence of actual innocence.

In short, Daniel fails to overcome the procedural default of these seven newly raised claims. Consequently, the Court is barred from considering them on the merits, and the Respondents' motion for summary judgment on these claims will be **GRANTED**.

### B. Remaining Claims

Daniel presents three claims that have not been procedurally defaulted: that his guilty plea is invalid because it was unknowing and involuntary; that his counsel was ineffective regarding the guilty plea; and that his counsel was ineffective due to a conflict of interest. Daniel properly exhausted his available state court remedies by fairly presenting these claim to the state courts. [See Doc. No. 12, Addendum No. 3]. Further, the state court adjudicated all three claims on the merits. [See Doc. No. 12, Addendum No. 9, Decision of the Court of Criminal Appeals of Tennessee].

Accordingly, the appropriate standard of review for each claim is the deferential standard delineated in AEDPA. Specifically, Daniel's habeas corpus petition "shall not be granted . . . unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *accord Howard*, 405 F.3d at 461.

### 1. Validity of Guilty Plea

Daniel claims that his guilty plea is invalid because it was unknowing and involuntary. Daniel specifically contends that the prosecutor coerced Daniel into pleading guilty by threatening to prosecute Daniel's family members for aiding in Daniel's escape and committing perjury during Daniel's first trial. In addressing this claim, the Tennessee courts applied the clearly established law governing such claims. [Doc. No. 11, Addendum No. 1 at pp. 70-77; Doc. No. 12, Addendum No. 9 at pp. 7-11]. The Tennessee courts applied *Boykin v. Alabama*, 395 U.S. 238 (1969), and its progeny in determining whether Daniel's plea was voluntary and intelligent. And in deciding whether the prosecutor unlawfully coerced Daniel's plea, the Tennessee Court of Criminal Appeals applied *Brady v. United States*, 397 U.S. 742 (1970), and its admonition that a plea is invalid if "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* at 755. By applying this law, the Tennessee courts' decisions are not contrary to clearly established federal law.

Further, the Tennessee courts did not unreasonably apply this law when deciding Daniel's invalid plea claim. The courts thoroughly examined whether Daniel's plea was knowing and voluntary and reached the reasonable conclusion that the plea was valid. Daniel, an "extremely intelligent" and "sophisticat[ed]" individual according to the post-conviction trial court [Doc. No. 11, Addendum No. 1 at p. 71], signed plea papers indicating that he understood the charges against him, that he understood and waived his rights to a jury trial, that he discussed the plea agreement with his attorney and understood and accepted the agreement. At Daniel's plea proceedings, the court orally advised Daniel of these same rights, the charges, and the terms of the plea agreement. Again, Daniel indicated that he understood and waived his rights, that he understood the charges, and that he understood and accepted the plea agreement offered by the prosecution. The Tennessee courts' conclusion that Daniel's plea was knowing is not unreasonable.

The Tennessee courts also found that Daniel's plea was voluntary and not coerced by the prosecution. In this regard, the courts found acceptable the state's indication that it would prosecute Daniel's family members if Daniel did not plead guilty. The Tennessee Court of Criminal Appeals noted that there is no Supreme Court decision barring prosecutor's from threatening to charge and prosecute a third party as leverage to entice a defendant to plead guilty. [See Doc. No. 12, Addendum No. 9 at pp. 9-10 citing *Bordenkircher v. Hayes*, 434 U.S. 357, 365 n.8 (1978)]. The court also noted that Courts of Appeals have concluded that such threats do not invalidate a defendant's guilty plea as involuntary. [*Id.* at p. 10 citing *United States v. Marquez*, 909 F.2d 738, 741 (2nd Cir. 1990)]. Moreover, the court also found important that, at his plea proceeding, Daniel said that no one threatened him or made any promises compelling him to plead against his wishes. [See Doc. No. 11, Addendum No. 1 at p. 76]. Based on this admission and the relevant law, the

Tennessee courts concluded that Daniel's plea was voluntary and intelligent. This decision is not unreasonable.

Finally, the Tennessee courts' decisions that Daniel's plea was valid were not based on an unreasonable determination of the facts. The post-conviction trial court heard the evidence, made credibility determinations, and reasonably determined the facts. Based on Daniel's actions in relation to this case and his demeanor at the hearing, the post-conviction trial court found that Daniel was not credible. [Doc. No. 11, Addendum No. 1 at p. 82]. In light of this credibility determination and the evidence presented at the hearing, the Tennessee courts reasonably viewed the facts based on the evidence presented at the post-conviction hearing. And Daniel does not argue otherwise now. Daniel fails to satisfy the burden to warrant post-conviction relief, and the Respondents are entitled to summary judgment on Daniel's invalid plea claim.

### 2. Assistance of Counsel

Daniel contends that his counsel was ineffective in explaining the nature and consequences of the guilty plea and due to a conflict of interest. In addressing these claims, the Tennessee courts applied the familiar, and clearly established, law governing such claims. [Doc. No. 11, Addendum No. 1 at pp. 77-79; Doc. No. 12, Addendum No. 9 at pp. 6-7, 11-12]. The courts applied the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating ineffective assistance of counsel claims. The courts noted that the *Strickland* test applies to ineffective assistance of counsel claims in regards to a guilty plea, pursuant to *Hill v. Lockhart*, 474 U.S. 51 (1985). And in addressing Daniel's claim this his counsel was ineffective due to a conflict of interest, the Tennessee Court of Criminal Appeals applied the dictates of *Cuyler v. Sullivan*, 446 U.S. 335 (1980). By applying this law to Daniel's claims, the Tennessee state courts' decisions are

not contrary to the clearly established federal law.

Further, the Tennessee courts did not unreasonably apply this governing law to the facts of Daniel's case. Regarding Daniel's first ineffective assistance of counsel claim—that his counsel was ineffective with regard to the guilty plea—the courts found that Daniel's counsel provided effective assistance during the plea negotiations and plea submission hearing. Daniel's counsel negotiated a favorable plea. Indeed, due to his counsel's efforts during the plea negotiations, Daniel's family was able to avoid prosecution and Daniel's sentence was substantially less than if he were convicted of all charges at trial. And Daniel's counsel properly advised Daniel of the terms of the plea agreement. Moreover, Daniel fails to establish that his counsel's performance during the plea process prejudiced his defense. In particular, Daniel fails to prove that he would not have plead guilty and would have gone to trial but for his counsel's performance. *See Hill*, 474 U.S. at 56-57. The Tennessee courts did not unreasonably apply *Strickland* or *Hill* in finding that Daniel's counsel was not ineffective in regards to the guilty plea.

Similarly, the courts did not unreasonably apply *Cuyler* or *Strickland* in deciding Daniel's claim that his counsel was ineffective due to a conflict of interest. The Tennessee Court of Criminal Appeals examined the alleged conflict of interest and found that no actual conflict existed. Additionally, the court concluded that any potential conflict did not prejudice Daniel. The court noted that this issue was raised before Daniel's first trial and, at a hearing on the matter, Daniel "waived any potential conflict of interest and expressed the desire to retain [his] counsel." [Doc. No. 12, Addendum No. 9 at p. 11]. The court's application of *Cuyler* and *Strickland* in this regard was not unreasonable.

And as above, the Tennessee courts' decisions regarding Daniel's ineffective assistance of counsel claims were not based on an unreasonable determination of the facts. After hearing the evidence, the post-conviction trial court made credibility determinations and reasonably determined the facts. Daniel does not now argue that these factual findings were unreasonable, and the Court finds that they were not. Daniel fails to satisfy the burden to warrant post-conviction relief. Accordingly, the Respondents are entitled to summary judgment on Daniel's ineffective assistance of counsel claims.

In sum, Daniel raises ten claims in his petition for post-conviction relief. Of these, seven are procedurally defaulted. Daniel fails to overcome this default, and this Court is barred from adjudicating these claims on the merits. Left standing is an invalid plea claim and two ineffective assistance of counsel claims. However, Daniel fails to satisfy the difficult burden necessary to obtain post-conviction relief on any of these three claims. The Respondents' motion for summary judgment [Doc. No. 8] will be **GRANTED**. A separate order will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE